## WILLIAM ALLING *v.* BRIDGET EGAN.

A wife having obtained a judgment of separation of property, levied a *fi. fa.* on the property of the husband, who subsequently applied for the benefit of the bankrupt act of Congress, of 19th August, 1841, and was discharged. The wife's execution not having been satisfied in full : *Held,* that the balance of the debt due by the husband, was extinguished by his discharge.

A creditor who seeks to enforce the payment of a note executed by a married woman, though separated in property from her husband, must prove that the consideration for which it was given, enured to her advantage.

Where a married woman, sued on her note, secured by mortgage, given for the repayment of money counted and delivered to her in the presence of the notary's clerk, adduces evidence which shows that the transaction was a disguised advance to her husband, she will be bound, if it be shown that she subsequently converted the fund to her own use, under false pretences, to the prejudice of the creditors of her husband.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

BULLARD J. The defendant, who is separated of property from her husband, and is a public merchant, being sued upon her promissory note, the payment of which is secured by mortgage upon her separate property, answered that she did execute and deliver the note sued on, together with another for $1,500, but she avers that they are void and not obligatory on her. That they were not executed for her benefit, nor has she ever received or enjoyed any part of the consideration, but that they were executed and given by her, at the request of the plaintiff and of her husband, with the intent to secure to said plaintiff certain sums of money, then due to him and owing by Egan, her husband, and that the note and mortgage were drawn in that form as a disguise to bind the defendant for a debt of her husband. She further claims, in reconvention, the sum of $1,600, which she alleges the plaintiff has in his hands belonging to her, it being the excess, over and above what was due to him on a former judgment, of the price of certain property of hers sold at sheriff's sale, and bought in by the plaintiff. She, therefore, prays that the note sued on may be declared null, and that she may have judgment in reconvention.

The note sued on bears date November, 1843, and it appears that after the defendant had recovered a judgment of separation

of property, and levied an execution on her husband's property, he went into bankruptcy. We must, therefore, regard the balance of the debt due by the husband to his wife as extinguished by the discharge in bankruptcy, and that, consequently, she had no longer a right to issue an execution ; that any property acquired by him afterwards was free from any claim on her part; and that, in truth, the community had ceased to exist.

Having premised these facts, and with this principle in view, it is important to enquire what became of the fund borrowed of the plaintiff, and whether, in truth, it turned to the advantage of the defendant, or that of her husband ; for it is now too well settled to require a reference to authorities, that the burden is upon the creditor in all cases like this, to show that the contract sought to be enforced against a married woman turned to her advantage.

The circumstances which attended the loan of money secured by mortgage, are singular. The money was actually counted to Mrs. Egan by Alling, in presence of the notary and clerk. About the same time, the books of the plaintiff show cash sales to Egan, the husband, for about the same amount, except a small lot of clothing previously sold to his wife, and which was sent back by her, and then returned to the store as a part of the stock of the husband. Simultaneously with this loan and purchase of goods, Egan was installed as a merchant in the store at the corner of Levée and Poydras streets, his name put in several conspicuous places, and books opened in his name. The stock upon which he was to carry on his business, released as he had recently been from his previous debts by going into bankruptcy, was undoubtedly, in a great measure, procured from the plaintiff by the very money which had been nominally loaned on the credit of Mrs. Egan, the defendant.

If, under these circumstances, Egan had continued to go on with business on his own account, and in his own name, to the knowledge of the plaintiff, without any interference on the part of his wife, with whom he was no longer in community, we should consider her as having merely lent her name and credit for the benefit of her husband, and consequently that she would not be bound, unless it could be clearly shown that her husband

was merely her agent, and that the business was in fact her own, although carried on in his name. But she did not abstain from interfering, and it is her subsequent acts which led to the breaking up of the husband and the transfer of the whole concern to the wife, which gave rise to the question raised in this case. On the 14th of May, 1844, the record shows that she caused a *pluries fi. fa.* to issue on the judgment recovered against her husband before his bankruptcy, and seized the whole stock of goods, and, on the 5th of June, as appears by the sheriff's return, the whole was sold, *in globo*, and the defendant became the purchaser of the *contents* of the clothing store for $4,000.

It is hardly necessary to say, although it does not appear to be universally known, that married women are as much bound to be honest as their husbands, and that it is equally incumbent on them to come into court with clean hands. We are not prepared to admit the doctrine literally as contended for by the defendant's counsel, that this suit embraces no issue other than the validity of the contract made by the wife, and that the issue must be decided upon the evidence touching the contract itself, and not by subsequent and collateral events. On the contrary, we think the contract is apparently valid. The money was paid into her own hands, after her separation from her husband ; and, with a view to avoid the contract, she adduces evidence to show that, in point of fact, it was a disguised advance to her husband. Shall she be permitted to stop here, and exclude all evidence as to the winding up of the transaction, tending to show who profited by the advance thus obtained, and the credit thus given to her husband? Clearly not. About twenty-eight hundred dollars were advanced by the plaintiff, and four thousand came into the hands of the defendant under pretence of a previous judgment which had become absolutely extinct by the bankruptcy of the husband. If it should be said that only a part of the stock of goods purchased by her at the sheriff's sale were the same sold by the plaintiff to Egan, it may be replied, that, although the plaintiff may not have had the vendor's privilege, the goods were the pledge of the creditors of Egan, and that the plaintiff is the only creditor shown by the record. It is further shown in the record that Mrs. Egan was herself the lessee of the

store from the 31st of October, 1843, for one year, she alone having signed the lease ; and it is not disputed that she had been previously a public merchant.

Thus the evidence adduced in this case appears to place the defendant in a dilemma ; either she obtained the credit for her own benefit as a merchant, and employed her husband as her agent, or she was surety for her husband, but afterwards converted the fund to her own use, under false pretences, to the prejudice of his creditors ; and in either case her defence must fail her.

The principle here urged by the defendant's counsel is substantially the same as was adopted by our learned brother of the Commercial Court, in sustaining the defence of the defendant, and giving judgment in her favor. He says it is not shown that the stock of goods was the same purchased of the plaintiff, and, if it was, it is not the kind of benefit which the law requires to create an obligation on the wife. The benefit must be direct and immediate from the contract. In this view of the case we do not concur ; on the contrary, we are of opinion that her whole defence must be taken together ; and that, if it turn out that, in consequence of the contract, she has put money in her pocket, equal at least to the sum advanced on her credit, she fails in her defence, and is bound by the original contract.

The court below did not pronounce upon the reconventional demand of the defendant, who had mortgaged other property which was bought in by the plaintiff at sheriff's sale, who, according to the sheriff's return, retained in his hands the whole amount of the purchase, about $1,500, over and above the amount stated in the order of seizure, to meet the payment of the previous mortgages on said property. The transaction is quite distinct from the one now before the court ; and if she has any recourse against the plaintiff for money unjustly retained, it is hereby reserved to her in a separate action.

The judgment of the Commercial Court is, therefore, reversed, and it is adjudged and decreed that the plaintiff recover of the defendant, Bridget Egan, thirteen hundred and ninety-two dollars and thirty seven cents, with interest at eight per cent from the 20th of November, 1843, till paid, and costs of both courts,

and that the mortgaged property be seized and sold to pay the same.

*Hoffman,* for the appellant.

*Benjamin* and *Micou,* for the defendant.